**UNITED STATES of America,**
**Appellee,**

v.

**Charles CAMPISI, Appellant.**

**No. 412, Docket 26720.**

United States Court of Appeals
Second Circuit.

Argued June 20, 1961.

Decided July 17, 1961.

Joseph J. Marcheso, Asst. U. S. Atty.,
Eastern Dist. of New York, Brooklyn,
N. Y. (Joseph P. Hoey, U. S. Atty.,
Eastern Dist. of New York, Brooklyn,
N. Y., on the brief), for appellee.

Daniel H. Greenberg, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Before CLARK and SMITH, Circuit Judges, and DAWSON, District Judge.

J. JOSEPH SMITH, Circuit Judge.

Appellant Charles Campisi appeals from the judgment of conviction and consecutive sentence of ten years imprisonment and fine of $2,000 imposed against him in the District Court for the Eastern District of New York on April 22, 1960, for conspiracy to violate Title 21 United States Code Annotated, § 174 (Title 18 United States Code § 371), and for a substantive violation of Title 26 United States Code, §§ 4705(a) and 7237, and Title 18 United States Code, § 2. Appellant was tried alone before Honorable Matthew T. Abruzzo, United States District Judge, and a jury. Leave to appeal *in forma pauperis* was granted and the Legal Aid Society was appointed to represent him on this appeal.

The indictment, filed August 11, 1955, charged the defendant Charles Campisi, his brother Thomas and three others, Frank Giampaoli, Ugo Giampaoli and Aniello Santagata, with conspiracy in the Eastern District of New York illegally to import, receive, conceal and sell narcotics between January 1, 1955 and August 3, 1955. The substantive count, Count Three, on which appellant was also convicted, alleged a sale in the Eastern District of New York on or about April 20, 1955. Appellant was claimed to have been a fugitive until March 1959, when he surrendered and was removed from the District of Connecticut to the Eastern District of New York to stand trial. Trial commenced March 23, 1960. Sentence was imposed April 22, 1960, appeal filed April 29, 1960.

Appellant relies on four claimed errors, prejudicial conduct of the trial, violation of the Jencks rule, infra, insufficient evidence of aiding and abetting the substantive crime charged, and prejudicial error in the charge.

The government's theory was that the two named Campisi brothers, residing in New Jersey, were the source of supply for Ugo Giampaoli, in the Eastern District, with Santagata as a go-between.

Undercover Agent Zirilli was introduced March 13, 1935 by a special employee, one Rich, or Montana, to Ugo Giampaoli, an alleged co-conspirator. Giampaoli, a chef at Bella Roma Restaurant in Hempstead, Long Island, resided at 143-43 Springfield Boulevard, Queens. Conversations were had between Zirilli and Giampaoli at both places. On inquiry as to the price of a half kilo of heroin, Giampaoli indicated that he would have to consult his source of supply. Later he quoted prices in lots of from ¼ to 1 kilo, 80–85% pure. On April 18, 1955 Giampaoli delivered a sample to Zirilli. The agent, interested in reaching Giampaoli's source, made no arrest at this time, but negotiated for a ¼ kilo purchase, although complaining about the quality of the sample. A price of $2,300 was agreed on, and paid by Zirilli, delivery to be made later that day. Zirilli and Giampaoli met that afternoon at the Jamaica race track. Giampaoli told Zirilli that he did not yet have the heroin, but would leave the Bella Roma Restaurant at 6:00 o'clock to get it and would deliver it to Zirilli at Giampaoli's house at 10:00 o'clock. Giampaoli returned to his house about 11:20 stating that the man had driven him almost to Philadelphia and had driven very slowly. He gave Zirilli ¼ kilo of heroin in a brown paper bag. Six other agents, in three teams, using three radio cars, undertook surveillance of Giampaoli from the time he left the race track. He went to a diner, dined alone, and returned to his house, where he was met by Santagata in a green Lincoln. After some circling the car crossed to Manhattan, then through the Holland Tunnel to a diner on the New Jersey side, where Santagata made two phone calls. The two then drove to 1 Kearney Avenue, Newark, and parked. Defendant and his brother Thomas arrived in a blue Chrysler, Charles driving. Thomas entered the Lincoln and spoke with Santagata and Giampaoli, returning to the Chrysler,

which then drove off. The Lincoln drove into Newark, stopped and Thomas Campisi entered it. The car proceeded to 458 South 11th Street, where defendant resided. Defendant was parked nearby in the Chrysler. Santagata, Thomas Campisi and Giampaoli went into the doorway of the building at 458 South 11th Street. Defendant Charles Campisi drove off in the Chrysler, returned and entered the vestibule, handing a brown paper package to Santagata. The four left, Santagata and Giampaoli in the Lincoln, defendant and Thomas Campisi in the Chrysler. The Lincoln was followed back to Giampaoli's home at 143–43 Springfield Boulevard, Queens, where Zirilli was waiting. Giampaoli entered the house with Zirilli and placed a brown paper bag, similar in size and shape to the one given him by defendant, on the kitchen table. The bag contained ¼ kilo of heroin in a black satin oilcloth.

On May 16 and 18, 1955, Zirilli negotiated with Giampaoli for another ¼ kilo, which Giampaoli indicated was to come from the same source in Newark but to be of better quality. Zirilli paid Giampaoli $2,400 in advance and on May 19 Santagata delivered the heroin, wrapped as was the April 20 delivery. Santagata later stated to Zirilli that the four Campisi brothers were his source in Newark. Zirilli and Santagata arranged to take a trip to Mexico for heroin, Zirilli introducing Agent Tremoglie as his brother-in-law who was to carry on his narcotics business while he was away. An effort was made to have Tremoglie meet the Campisis, Santagata taking him to Newark and delivering another ¼ kilo to him within a block of Thomas Campisi's residence, but avoiding the requested meeting. On July 19, 1955, however, Tremoglie, on a trip to Newark with Giampaoli and Montana, a special employee, refused to pay over the money ($2,500) in advance unless he met the connection, and succeeded in meeting Thomas Campisi, who sold ¼ kilo, stating that it was from the same package as Tremoglie got when he came up with Santagata, that he had a package and

broke it in four, and this was the last quarter. Further attempts to make purchases from Thomas Campisi failing, arrests were made on August 3, 1955.

Considering first the attack on the sufficiency of the evidence on the substantive count, this court has held in the companion case that the statements of Santagata identifying the Campisi brothers as the source of the April 20 and May 19 deliveries were admissible on both conspiracy and substantive counts. United States v. Campisi, 2 Cir., 1957, 248 F.2d 102, 106. The statements of Thomas to Tremoglie were likewise made in carrying out the conspiracy and are properly in evidence here against Charles, as to whose participation there is also the eye-witness testimony of the agents as to the April 20 transaction. The evidence is sufficient to support the verdict on both counts. Nor can appellant's claim that his substantive crime was complete in New Jersey be sustained. The jury was entitled to find that defendant knew that Giampaoli was not purchasing for himself, but was acting for the Campisis, particularly in view of Giampaoli's need for confirmation from his "source" as to quality, price and other details, and the proof as to the course of dealing from the time of furnishing the sample through the four ¼ kilo deliveries.

Appellant attacks the conduct of the trial, especially the action of the judge in requiring the defense to rest at 4:25 when defense counsel ran out of witnesses and claimed to have three more who would be available the next day. It is true that some rulings and remarks by the judge, directed to defense counsel, taken out of context might be construed as indicating a bent against the defense. A review of the entire trial transcript, however, reveals that the judge was at least equally strict with government counsel in the interest of orderly and expeditious handling of the issues. The jury could not well have gained the impression that the judge was partial to either side. The requirement that defendant rest at 4:25 came after warning

earlier in the day that court would sit until 5:00, the witnesses were stated to be neighborhood witnesses to defendant's presence in Newark during the alleged fugitive period, cumulative to others who had testified to that effect, and no good reason was advanced for failure to have them available. Since their testimony was desired only on a collateral matter, and the jury was advised as to the tenor of their expected testimony, the ruling was well within the court's discretion. See 6 Wigmore, Evidence (3d Ed.1940) §§ 1907, 1908.

■ The appellant contends that failure to make available pre-trial statements by the witness Costa violated the Jencks rule. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103; 18 U.S.C. 3500. The court ruled (R. p. 451) that the government must produce to defense counsel "all of the statements that were directly made by the witness now on the stand," " * * * the only parts of his statement that directly concern this conspiracy." It appears, however, that the only paper actually withheld was Government's Exhibit 20 id. This exhibit was a memorandum report stating the names of the agents who testified before the Grand Jury in the instant case and in another case, and the names of those indicted in each case. There is no statement as to the facts in this case nor as to the nature or substance of the testimony of the agents before the Grand Jury. If there was any error in withholding this memorandum it was harmless, for no basis for cross examination exists therein.

■ Although no exception was taken to the charge, appellant contends that prejudicial error was committed in an instruction "That you must believe the agents with respect to what happened in Jersey. You must believe that the agents had that car under complete surveillance, the Lincoln car with the narcotics that got to Brooklyn; that it was the same package that was delivered in Brooklyn, that was delivered by Charles Campisi to Santagata, and that there was no break in the continuity of events."

Taken alone, this does appear to be a direction to the jury that they were bound to accept the testimony of the agents as true. If so, it would of course be error, and would be noticed by the court even though no proper objection was made. United States v. O'Connor, 2 Cir., 1956, 237 F.2d 466, 472. A reading of the charge as a whole, however, makes it plain that at this point the judge was detailing the elements which must be found *in order to convict*. It might have been wiser to insert such a phrase in each sentence, but we have no doubt that the jury so understood the charge. Counsel undoubtedly also so understood it, and therefore made no objection. The objection to the wording may therefore be considered waived. United States v. Private Brands, Inc., 2 Cir., 1957, 250 F.2d 554, Rule 30 F.R.Cr.P., 18 U.S.C.A. United States v. Campisi, 2 Cir., 1957, 248 F.2d 102, 107.

The appellant attacks also the use of the term "presumption of guilt" in the instruction: "You may not draw the presumption of guilt from the fact alone that he did not take the stand. But that is the rule of law that you must apply to it." The instruction, however, followed directly upon the reading of the statute which provides that failure of an accused to request that he be a witness shall not create any presumption against him. The instruction might well have been reworded or amplified but no request was made or exception taken. Any objection to the wording is considered waived under the Rule.

■ Finally, the appellant attacks the imposition of consecutive sentences for the substantive and conspiracy counts. We do not find them inappropriate here. The substantive count itself involved sale of ¼ kilo of heroin, the conspiracy at least a kilo. There was involved here a type of criminal traffic depending on a combination of a number of persons to conceal, transport and distribute the illegal drugs. The counts were not merely variants of a single criminal transaction as in United States v. Pagano, 2 Cir., 1955, 224 F.2d 682. The size of the

transactions and the group participation in repeated criminal transactions support the cumulative punishment imposed.

We express our thanks to the assigned counsel for his very able presentation of this appeal.

Judgment affirmed.