UNITED STATES of America,
Plaintiff-Appellee,

v.

Edsel GRIFFIN, Defendant-Appellant.

No. 16933.

United States Court of Appeals
Sixth Circuit

Aug. 23, 1967.

John D. O'Connell, Detroit, Mich., for appellant, Edsel Griffin, Detroit, Mich., on the brief.

Milton J. Trumbauer, Detroit, Mich., for appellee, Lawrence Gubow, U. S.

Atty., Joel Martin Shere, Asst. U. S. Atty., Detroit, Mich., on the brief.

Before O'SULLIVAN and CELEBREZZE, Circuit Judges, and NEESE, District Judge.*

NEESE, District Judge.

This cause presents the appeal of Edsel Griffin from a judgment entered upon a jury verdict convicting him of violating the narcotics laws. He was convicted on each of seven counts. Counts one, four and six charged that he and another unlawfully received and concealed narcotic drugs on separate dates in June, 1963, in violation of 21 U.S.C. § 174. Counts two, five and seven charged that he and another unlawfully sold narcotic drugs on the same respective dates in violation of 26 U.S.C. § 4705(a), and count three charged him and another with the unlawful purchase of narcotic drugs in violation of 26 U.S.C. § 4704(a) on June 11, 1963.

■ The judgment and sentence imposed are attacked upon several grounds. Two of the grounds relate to matters occurring during the trial, to which no objection was interposed at the time. Such failure of seasonable objections constituted a waiver of these objections. United States v. Campise, 292 F.2d 811, 814 [6] (C.A. 2, 1961). Thus, our concern here is with the appellant's claim that the evidence was insufficient to support his conviction, and his claim that the District Judge erred in failing to instruct the jury *sua sponte* that the testimony of a paid informer of the Government, addicted to narcotics, must be viewed with caution and weighed with great care. The former depends on the latter, in this instance.

The following are the background facts. One Charles Blassingame testified that the defendant and one Trudy Lewis came to his home in Detroit, Michigan on June 11, 1963 when he was addicted to narcotics, and offered to supply him with narcotics of high potency at a reasonable price. The addict expressed interest but demanded a sample before negotiating any purchase. The defendant Griffin [1] promised to provide a sample in short order and advised Blassingame that he could always be reached through Miss Lewis.

This conversation was reported by Blassingame to agent Miller of the United States Bureau of Narcotics who arranged to meet Blassingame and confiscate the contraband if and when the delivery was made. There was another conversation between the informer and the agent about 4:30 o'clock p. m., that day, which was interrupted by the appearance of the defendant with two small packets of heroin wrapped in tinfoil, for which Blassingame paid $20. Blassingame injected himself with the contents of one of the packages and delivered the other to the narcotics agent. The tinfoil was subsequently found to contain .28 grams of heroin. Sometime during that day, Blassingame reported to the agent that the defendant was driving a blue 1962-model Cadillac automobile, bearing license plate # ED-6624. Donald T. Howard, another federal narcotics agent, saw the defendant park a blue 1962-model Cadillac automobile about 4:30 o'clock, p. m., in the neighborhood and walk in the direction of the Blassingame residence.[2]

Miss Lewis talked with Blassingame early the next morning by telephone and arrangements were made for the informer to purchase ¼-oz. of heroin from her for $120 at his residence about 6:00 o'clock, p. m., that day. This fact was also reported to agent Miller. Afterward, Blassingame claims he was called

---

* C. G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. The appellant Edsel Griffin is referred to as the defendant.

2. This apparently was a happenstance. Agent Howard had no information at the time to support a suspicion that this vehicle might then have been used in the illegal trafficking in narcotic drugs. It was developed afterward that the defendant Griffin was not the registered owner of the automobile which he was using.

by the defendant Griffin and told that this transaction could not occur until after 7:00 o'clock, p. m., " * * * because the fellow [evidently supplying the drugs] wouldn't be in until seven * *." This revision in time was also reported to agent Miller. Miss Lewis delivered this quantity to Blassingame in his home at the revised time. Narcotics agents and local officers saw Miss Lewis and Blassingame talking outside the latter's home before the transaction took place within. Agent Miller overheard the conversation outside by means of a Porto-talk radio, Blassingame having been outfitted with a transmitter theretofore. This agent afterward recovered ¼-oz. of heroin and $30 cash from Blassingame. The defendant was not observed in the area of the Blassingame residence at the time Miss Lewis made this sale.

Pursuant to directions of the federal agents, the informer made no further contact with the defendant or Miss Lewis until June 25, 1963, when he was instructed to arrange another purchase. Blassingame claims he located the defendant and Miss Lewis near their apartment on the streets of Detroit and advised them he wished to purchase yet another ¼-oz. of heroin. Blassingame testified that the defendant's response to this expression was "okay", and that a price of $125 was agreed upon. Thereafter, after the informer had been equipped to transmit sound, Miss Lewis delivered this quantity of narcotics to Blassingame and collected the agreed price. On this occasion, narcotics agents saw the defendant and another Negro man seated in a parked blue 1962-model Cadillac automobile about one block from the Blassingame residence. This vehicle had been moved when the agents doubled back to investigate further, however. " * * * The mere presence of the accused at [or near] the scene of a crime does not, of itself, justify drawing an inference that he participated therein. Cf. United States v. Di Re, 1948, 332 U.S. 581, 593,

68 S.Ct. 222, 92 L.Ed. 210; Hicks v. United States, 1893, 150 U.S. 442, 451, 14 S.Ct. 144, 37 L.Ed. 1137. * * *" Glenn v. United States, 271 F.2d 880, 881, 883 [3] (C.A. 6, 1959).

The defendant Griffin and Trudy Lewis were indicted for these offenses and tried jointly. Only the informer Blassingame and three federal narcotics agents testified for the prosecution. Neither defendant testified[3] or offered any witnesses. Both defendants made a motion for entry of a judgment of acquittal. Counsel for the defendant Griffin urged as grounds for the motion (a) that there was insufficient evidence on which to submit the issues to the jury as to any of the seven counts and (b) that the jury should not be permitted to speculate on the substantially uncorroborated testimony of an informant, having a background such as that of Mr. Blassingame. On the latter point, the attention of the District Judge was invited to People v. Bazemore, 25 Ill.2d 74, 182 N.E.2d 649, where the conviction of a defendant by a trial judge without a jury was reversed because it was based on the uncorroborated testimony of a paid informer who was addicted to narcotics. This served to apprise the Court that counsel " * * * intended to argue and request instruction thereon. * * *" United States v. Baker, 373 F.2d 28, 30 [1] (C.A. 6, 1967).

In overruling the aforesaid motions of both defendants, the District Judge said:

" * * * Gentlemen, the matter of corroboration and whether this Circuit follows the Illinois practice or the different Sixth Circuit practice, we really don't come to. There has been corroboration here in many instances. I cannot reject the testimony of corroboration that has come in from other sources.

"Now, the Government's theory, in the most simple possible terms, is that Trudy Lewis and Edsel Griffin were

---

3. For some reason unexplained in the record, the defendant Griffin, through counsel *and personally*, requested that the District Judge make no reference in his charge to the defendant's failure to testify.

working together in this unlawful venture. We find them together. We find telephone calls referring one to the other. We find certain meetings set up in their behalf.

"I am forced to the conclusion, Gentlemen, that for the purposes of this motion there is enough to establish what has been called in some of the cases 'a partnership in crime.' [United States v. Smith, 343 F.2d 847 (C.A. 6, 1965), cert. den. 382 U.S. 824 [86 S. Ct. 55, 15 L.Ed.2d 69] (1965).]

"That being the case, we cannot grant the motions to acquit that have been made, and the matter will have to go to the jury. * * *"

As the trial was about to be resumed the following morning, Miss Lewis changed her plea from not guilty to guilty on the third count of the indictment. The District Judge then simply announced to the jury, by agreement of all concerned, that the case of Miss Lewis had " * * * been disposed of * * *."

Counsel for the defendant Griffin vigorously argued the credibility of the informer Blassingame before the jury, but he neglected to request the District Judge to instruct the jury specially that the testimony of the informer was to be received with caution and weighed with great care.[4] From his motion for a judgment of acquittal and his argument to the jury, counsel for Griffin indicated his heavy reliance on the tenuous character of the witness Blassingame, and accordingly, the District Judge would have been justified in including the special cautionary instruction *sua sponte* despite the neglect or oversight of Griffin's lawyer in failing to specifically request it. If there was any doubt as to whether defense counsel intended to request this instruction, the District Judge " * * * could under Rule 30, Fed.R. Crim.P., have required written instruction requests to have been submitted * * * after defendant's counsel had

relied on the defense * * * in his closing argument. * * *" United States v. Baker, supra, 373 F.2d at 30 [1].

We consider the pertinent errors, as follows:

A. The Sufficiency of the Evidence:

If the testimony of the addicted informer Blassingame is to be believed, we agree with the District Judge that there was sufficient evidence of the formation of a common plan or design between the defendant Griffin and Miss Lewis and sufficient evidence of the defendant's actions, conduct, declarations and connection with the actions and conduct of Miss Lewis to support the guilty verdicts returned on each count by the jury. Cf. United States v. Thomas, 342 F.2d 132, 133–134 (C.A. 6, 1965), cert. den. 382 U. S. 855, 86 S.Ct. 105, 15 L.Ed.2d 92. Without the testimony of Blassingame, however, the only evidence against Griffin was that he was seen walking from a blue 1962 Cadillac automobile in the general direction of Blassingame's residence at about the time that the informer claims Griffin delivered him a sample of narcotics on the afternoon of June 11, 1963, and that he was seated in this same vehicle a block removed from the Blassingame residence at about the time that Trudy Lewis sold Blassingame more narcotics on June 25, 1963. Absent the testimony of Blassingame, this record is devoid of any evidence that Miss Lewis and the defendant Griffin formed a common plan or design to engage in a criminal partnership.[5]

It was from Mr. Blassingame that the jury heard that Miss Lewis and Griffin were working together in an unlawful venture. It was only Blassingame who placed these two persons together at the same times and places. It was only Blassingame who said there were telephone calls referring one of these persons to the other. It was Blassingame, and Blassingame alone, who claimed that

---

4. The defendant Griffin was represented on the trial by appointed counsel and on appeal by retained counsel.

5. The District Judge submitted all counts of the indictment to the jury on the joint criminal enterprise theory.

meetings were set up on behalf of Griffin and Miss Lewis. Obviously, then, the witness Blassingame tipped the scales of justice against the interests of the defendant Mr. Griffin.

The testimony of Mr. Blassingame stands uncontradicted in this record. The District Judge, *inter alia*, instructed the jury that a " * * * presumption is an inference which the law requires the jury to make from particular facts in the absence of convincing evidence to the contrary. Now, a presumption continues in effect until it is overcome or outweighed by evidence to the contrary. But unless it is so outweighed you * * * are bound to find in accordance with the presumption. * * *

　　　*　　*　　*　　*　　*　　*

" * * * A witness is presumed to speak the truth, but this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony, or by contradictory evidence.[6] * * *"

　　　*　　*　　*　　*　　*　　*

"If you find the presumption of truthfulness is outweighed as to any witness, you will give the testimony of that witness such credibility, if any, as you think it deserves. * * *"

In rejecting emphatically the notion that there is a legal presumption that every witness speaks the truth, it has been said:

> " * * * It is perhaps safe to say that the vast majority of witnesses speak the truth and that jurors are aware of this. But we have not found an authoritative case * * * casting that tendency of human nature into a legal presumption in a criminal case tried to a jury. In addition to derrogating from the jury's sole right to determine the credibility of witnesses, this rule conflicts with the presumption

of innocence of a defendant. * * * [It] * * * also clashed with the charge regarding the burden of proof. The [defendant] did not take the [witness] stand or offer any witnesses on his behalf. Under the circumstances the jury could have concluded that they were required to accept the testimony of [Blassingame and other of] the prosecution's witnesses at its face value since it was not contradicted by other witnesses. * * *" United States v. Meisch, 370 F.2d 768, 773 [14–16] (C. A. 3, 1966).

" * * * [I]ncriminating presumptions are not to be improvised by the judiciary. * * *" Morissette v. United States, 342 U.S. 246, 275, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952).

### B. The Failure to Charge *sua sponte* a Special Cautionary Instruction:

The defendant now urges that we hold that a conviction which depends upon the testimony of a paid informer, who is also a narcotics addict, will not be allowed to stand in the absence of substantial corroboration. This is not the prevailing rule, On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), and we decline to adopt the suggestion. Chief Circuit Judge Murrah, speaking for the Tenth Circuit, has well stated the prevailing rule, as follows:

> " * * * Though unwilling to outlaw government use of informers and their kin as 'dirty business' in which the sovereign ought not to indulge, the Courts have recognized the serious questions of credibility inherent in the use of such witnesses. To make sure they are properly identified for what they are in the scheme of the administration of criminal justice we allow wide latitude in cross-examination and submit the issue of credibility 'to the jury with careful instructions.' See

---

6. Although the informer Blassingame had admitted under oath that he was a convicted felon, the jury was not advised that the "presumption" that a witness speaks the truth may also be out-weighed by evidence that the witness has been convicted of a felony. See Smith v. United States, 283 F.2d 16, 22 [10], 87 A.L.R.2d 394 (C.A.6, 1960), cert. den. 365 U.S. 847, 81 S.Ct. 808, 5 L.Ed.2d 811.

On Lee v. United States, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270.[1]

1. [in original] Mr. Justice Black apparently would reject the testimony of informers as a matter of policy. See Comment, On Lee v. United States, supra, p. 758, 72 S.Ct. 967. [The late] Mr. Justice Frankfurter dissenting stated that a criminal prosecution 'should not be deemed to be a dirty game in which "the dirty business" of criminals is outwitted by "the dirty business" of law officers.' Id., p. 758, 72 S.Ct. p. 974.

Thus, if the incriminating testimony of an informer is uncorroborated or unsubstantiated, special cautionary instructions are surely required. See Orebo v. United States,[7] 9 Cir., 293 F.2d 747; Joseph v. United States, 5 Cir., 286 F.2d 468; United States v. Masino, 2 Cir., 275 F.2d 129. If such testimony is corroborated in critical respects, we nevertheless favor careful instructions in form and substance calculated to call attention to the character of the testimony of the informer, leaving to the jury the ultimate question of value and credibility. * * * The sufficiency of the instructions depends upon other incriminating circumstances of the case tending to corroborate the informer. See Dunn v. United States, 318 F.2d 89, 93 [C.A. 5, 1963]; Joseph v. United States, supra. * * *"

Todd v. United States, 345 F.2d 299, 300 [1–4] (C.A. 10, 1965).

■ Reversal is not warranted, despite the failure to request an instruction specially or to object to the charge, unless there is plain error in the charge affecting the substantial rights of a defendant, see Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 10 L.Ed.2d 462; however, " * * * in a case where plain error has been committed affecting substantial rights of the accused in a criminal case an appellate court may take no-

7. Cert. den., 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389.

8. Including a collection of cases by [now Chief] Judge Weick.

tice on its own motion of such error", Glenn v. United States, supra, 271 F.2d at 883 [4],[8] not urged before the District Judge, Sartain v. United States, 303 F.2d 859, 862 [4] (C.A. 9, 1962), cert. den. 371 U.S. 894, 83 S.Ct. 194, 9 L.Ed.2d 127. The strength of the case has a bearing on the prejudicial error issue, Osborne v. United States, 351 F.2d 111, 118 [8–10] (C.A. 8, 1965); and if there was no direct evidence against the defendant which was untainted, and the corroboration of the informer was only minor in character, a special cautionary instruction is required. Orebo v. United States, supra; On Lee v. United States, supra, 343 U.S. at 756, 72 S.Ct. at 973, 96 L.Ed. at 1277 (headnote 12). " * * * All of this makes it important therefore to consider the Government's case inescapably advanced through the story of the [informer] and to weigh it carefully to determine whether the testimony of the [informer] was both so critical and also so suspect that the jury needed the law's traditional caveat as to its evaluation and use. * * *" Williamson v. United States, 332 F.2d 123, 128 [3] (C.A. 4, 1964).

The addicted informer Blassingame admitted under oath that he was spending an average of $40 or more weekly in June, 1963 to purchase narcotics for his own use, although he was unemployed at the time. However, he was then operating in his home an after-hours "good-time house", dispensing illegally both beer and whiskey. In addition to his felony conviction, he admitted having engaged regularly in a multiplicity of confidence games.[9]

■ Obviously, the testimony of Mr. Blassingame was highly suspect, as well as being essential to Griffin's conviction. It is a " * * * well recognized fact that a drug addict is inherently a perjurer where his own interests are concerned. * * *" Fletcher v. United

9. In an earlier mistrial of this action, the informer also admitted the unlawful possession at this time of a pistol, committing thefts, falsification of his income tax return, and serving as a pimp.

States, 81 U.S.App.D.C. 306, 158 F.2d 321, 322 [2] (1946). Except for two telephone calls which the informer made to narcotics agent Miller, and the delivery to the agent by Blassingame of a packet of heroin, Blassingame, who was paid $50 for his services by the Government, could easily have manufactured the events of June 11, 1963 "out of whole cloth". The same is true of the telephone call which Blassingame claims he received from Griffin the following day; likewise, the reported response of the defendant when Blassingame negotiated the purchase of more heroin on June 25.

■ The bad character of the informer, emphasized by his addiction, resulted in a weak case for the prosecution. Viewing the testimony in the most favorable light to the prosecution, as we now must, all the direct evidence of Griffin's participation in a common plan or design to violate the narcotics law was tainted in critical respects by its source. The informer was corroborated only in minor details, many of which could have been the product of his own prevarication.

On the other hand, the evidence was abundant to have supported the conviction of Trudy Lewis on all counts of the indictment. Such evidence was substantially corroborated by federal agents. This increased the danger of the jury's transference, subconsciously or otherwise, of the guilt of Miss Lewis across the line of the purported common plan to the defendant Griffin. Indeed, this danger was so great " * * * that no one really can say prejudice to substantial right has not taken place. * * *" Kotteakos v. United States, 328 U.S. 750, 774, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946). Guilt by association is a discredited doctrine.

Uphaus v. Wyman, 360 U.S. 72, 79, 79 S.Ct. 1040, 3 L.Ed.2d 1090 (headnote 11) (1959).

■ Conviction might probably have resulted even if the cautionary instruction had been given, but this is not the criterion. Kotteakos v. United States, supra, 328 U.S. at 776, 66 S.Ct. 1239 (headnote 11). Griffin had a clear right to have the issue of the informer's credibility submitted to the jury " * * * with careful instructions * * *." On Lee v. United States, supra, 343 U.S. at 757, 72 S.Ct. 967. Not one witness, other than the informer Blassingame, spoke one word as to any criminality on the part of the defendant Griffin. Under these exceptional circumstances, the lawyer assigned to defend him should have requested the special cautionary instruction. We have no doubt that the District Judge in this instance would have granted the request and given the charge. But, whether emanating from the fault of the attorney or from judicial error, plain error occurred when Griffin was not accorded his right. "Careful instructions", under the exceptional circumstances [10] presented herein, demanded a charge as to the jury's evaluation and use of the testimony of the addicted informer. Its absence herein worked substantial prejudice to the defendant.

" * * * Had the jury convicted on proper instructions it would be the end of the matter * * *", Morissette v. United States,[11] supra, 342 U.S. at 276, 72 S.Ct. at 256, but the only way now to eradicate the omission and accord Griffin his right is to grant a new trial.

The judgment is reversed and a new trial ordered.

10. We should not be understood to hold that the failure of a trial judge to give this charge *sua sponte* is always error *per se.*

11. Reversing this Circuit.