UNITED STATES of America,
Plaintiff–Appellee,

v.

Sammy Don McGHEE,
Defendant–Appellant.

No. 88–5878.

United States Court of Appeals,
Sixth Circuit.

Argued May 23, 1989.

Decided Aug. 18, 1989.

John W. Gill, Jr., U.S. Atty. and Steven H. Cook, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Chattanooga, Tenn., for the U.S., plaintiff-appellee.

Jerry H. Summers (argued), Summers, McCrea & Wyatt, Chattanooga, Tenn., for Sammy Don McGhee, defendant-appellant.

Before MERRITT and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a sentence imposed under the new sentencing guidelines following the appellant's conviction on charges involving the possession and distribution of cocaine and phencyclidine (PCP). The appellant's sentence was enhanced by two levels under § 2D1.1(b) of the guidelines because of his possession of firearms during the commission of the offenses. The commentary to this section of the guidelines states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

The appellant argues, among other things, that he was denied due process of law by being required to show affirmatively that it was "clearly improbable" that the weapons were connected to the offense. He also argues that his Sixth Amendment right to a jury trial was violated, and that even if the enhancement provision is constitutionally sound, there was not sufficient evidence to show that the firearms discovered in his residence were in fact connected to the offense. Finding none of these arguments persuasive, we shall affirm the judgment of the district court.

I

On January 14, 1988, Sammy Don McGhee and a housemate were arrested at the McGhee residence in East Ridge, Tennessee, by officers of the Hamilton County Sheriff's Department. The arrest was the result of Mr. McGhee's purchase of a quantity of cocaine from his daughter, Tammy McGhee Claremont, a government informant who was wearing an electronic surveillance device.

Upon searching the McGhee residence, pursuant to a warrant, the officers found an antiperspirant can with a false bottom containing bags of cocaine and PCP, a chocolate syrup can with a false bottom containing bags of cocaine, cocaine on a tray in the bedroom, electronic scales, triple beam balance scales, a cocaine sifter and an accompanying replacement screen, and several bottles of Inositol, commonly used as a cutting agent for cocaine. The search also turned up eight rifles concealed in a secret compartment in the floor under the living room couch, six handguns in a secret compartment in the living room wall, and a .38 caliber pistol in a safe in Mr. McGhee's bedroom. Ten to fifteen boxes of ammunition were found in various places around the house.

A federal grand jury returned a two-count indictment against Mr. McGhee, charging him with possession of cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and possession of PCP with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Although the McGhee residence might appear to have been a classic drug "fortress," see *United States v. Henry*, 878 F.2d 937 (6th Cir. 1989), Mr. McGhee was never charged with a violation of 18 U.S.C. § 924(c)(1) ("Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....").

Before the scheduled trial date, the grand jury returned a superseding indictment that contained four counts. Count one charged Mr. McGhee with having distributed cocaine on April 3, 1987, in violation of 21 U.S.C. § 841(a)(1). This count related to a cocaine sale Mr. McGhee had made to his daughter on that date. The remaining counts, all of which stemmed from the events of January 14, 1988, charged Mr. McGhee with conspiracy to distribute and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 846; possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and possession of PCP with

intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Following a four-day trial, Mr. McGhee was found guilty on all four counts. A sentencing hearing was held on July 27, 1988, after the submission of a pre-sentence report. Because counts two, three, and four related to offenses committed after January 1, 1986, the district court applied the sentencing guidelines to those counts.

The court selected a base offense level of 16, corresponding to the total of 28.3 grams of cocaine and 6.3 grams of PCP found in Mr. McGhee's residence. The base offense level was increased by two points by reason of § 2D1.1(b) of the guidelines, which provides that: "If a firearm or other dangerous weapon was possessed during commission of the [drug] offense, increase by 2 levels." An additional two points were added because, based on his daughter's testimony that she and three other people worked for him, Mr. McGhee was considered to be a leader or organizer.

When the resultant offense level of 20 was cross-indexed with Mr. McGhee's criminal history category of five, the result was a guideline range of imprisonment for 63 to 78 months. The court decided on sentences of 78 months' imprisonment on all three counts. The court then added 33 months under 18 U.S.C. § 3147, in recognition of the fact that the January 14 offenses occurred at a time when Mr. McGhee was out of jail on bond. Mr. McGhee was thus sentenced to serve a 111–month term of imprisonment on counts two, three, and four. On count one, which arose from conduct committed before the guidelines took effect, Mr. McGhee was sentenced to 20 years in prison, to be served concurrently with the sentence imposed for the other three counts. Additionally, the court imposed a $15,200 fine and a six-year term of supervised release.

## II

On appeal, Mr. McGhee argues that the firearms enhancement provision of § 2D1.1(b) is unconstitutional as applied to him. Under the commentary accompanying this section, he says, the burden of proof is placed on the defendant to show that the enhancement provision should not be applied. That commentary reads, in part, as follows:

"The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet."

Mr. McGhee claims that the shift in the burden of proof on the probability of a connection between the weapons and the offense runs afoul of the Due Process Clause as interpreted by the Supreme Court in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

In *Winship*, the court held that even in a juvenile delinquency proceeding the prosecutor must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." 397 U.S. at 364, 90 S.Ct. at 1073.

*Mullaney* involved a Maine law under which any felonious homicide was punishable as murder unless the defendant proved by a preponderance of the evidence that the killing was committed "in the heat of passion on sudden provocation;" in that event the crime would be punishable as manslaughter. 421 U.S. at 691–692, 95 S.Ct. at 1885–86. The Supreme Court rejected the government's argument that because the issue did not arise until after the jury had decided whether the defendant was at least guilty of manslaughter, the absence of "heat of passion on sudden provocation" was not a fact necessary to constitute the crime of felonious homicide. Mr. Justice Powell wrote, for a unanimous Court:

"The safeguards of due process are not rendered unavailing simply because a de-

termination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter, differ significantly. Indeed, when viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction established by Maine between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes.

Moreover, if *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." *Id.* at 698, 95 S.Ct. at 1889.

Mr. McGhee would have us liken the enhancement in punishment for drug offenses where the defendant possesses a firearm to the treatment of felonious homicide as murder where the defendant fails to prove that he acted in the heat of passion on sudden provocation. The analogy, we believe, is flawed. This case differs from *Mullaney* in that possession of a firearm during the commission of a drug offense may fairly be considered by the court as a factor bearing on the extent of punishment, while the absence of the heat of passion on sudden provocation is more appropriately categorized as one of the elements of the substantive crime, to be established to the satisfaction of the jury beyond a reasonable doubt. Not all factors that bear on punishment need to be proven before a jury.

If *Mullaney* left any doubt as to this proposition, it was dispelled by the decision in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Patterson* the Court upheld a New York murder statute that placed the burden on the defendant to show that his actions were conducted under extreme emotional disturbance. The Court noted that before the presence of extreme emotional disturbance could even become an issue, the state had to prove beyond a reasonable doubt that the defendant had intentionally killed another person.

"If the State nevertheless chooses to recognize a factor that mitigates the degree of criminality or punishment, we think the State may assure itself that the fact has been established with reasonable certainty. To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." *Id.* at 209, 97 S.Ct. at 2326. (footnote omitted.)

The Court recognized that its decision created some incentive for legislatures "to reallocate burdens of proof by labelling as affirmative defenses at least some elements of the crimes now defined in their statutes." *Id.* at 210, 97 S.Ct. at 2327. But the Court refused to presume that the affirmative defense of extreme emotional disturbance was really an element of the crime, in light of the traditional common law view that the burden of proof was on the defendant to prove provocation in murder cases. *Id.* at 202 n. 8, 97 S.Ct. at 2323 n. 8.

Equally pertinent here is the decision in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *McMillan* upheld the constitutionality of Pennsylvania's Mandatory Minimum Sentencing Act, which provided that anyone convicted of certain enumerated felonies would be subject to a mandatory minimum prison sentence if the sentencing judge found, "by a preponderance of the evidence, that the person 'visibly possessed a firearm' during the commission of the offense." *Id.* at 80, 106 S.Ct. at 2413. The *McMillan* Court commented as follows on the "specter" raised by *Patterson* of "States restructuring existing crimes in order to 'evade' the commands of *Winship*":

"The Pennsylvania Legislature did not change the definition of any existing offense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an 'element' of some hypothetical 'offense.'" *Id.* at 89–90, 106 S.Ct. at 2417–18.

The same can be said of the firearms enhancement provision in § 2D1.1 of the guidelines. "Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved sentencing schemes that mandate consideration of facts related to the crime ... without suggesting that those facts must be proved beyond a reasonable doubt." *McMillan,* 477 U.S. at 92, 106 S.Ct. at 2419. The sentence enhancement provision at issue here would seem to be more favorable to the defendant than the one upheld in *McMillan,* for the guidelines provision gives the defendant a chance to show that it was "clearly improbable" that the firearms he possessed were connected to the crime—an opportunity the defendant in *McMillan* did not have.

### III

Mr. McGhee makes several additional arguments, none of which is meritorious. First, he claims that the application of the enhancement provision of § 2D1.1(b) violated his Sixth Amendment right to be tried by a jury of his peers. The Supreme Court summarily rejected a similar argument in *McMillan,* writing:

"Having concluded that Pennsylvania may properly treat visible possession as a sentencing consideration and not an element of any offense, we need only note that there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." 477 U.S. at 93, 106 S.Ct. at 2420.

Alternatively, Mr. McGhee argues that if the sentence enhancement provision is constitutional, he was not shown to have "possessed" the firearms found in his residence—and it was "clearly improbable," he says, that the firearms were connected with his drug offenses. He claims that the guns all belonged to someone with whom he shared the house, or to a visitor, and that the inaccessibility of the firearms in the hidden wall and floor compartments shows that they were not connected to the offense.

We are not persuaded. The fact that the residence belonged to Mr. McGhee gives rise to an inference that the firearms were his also, and no evidence was introduced either at the trial or the sentencing hearing that would convince anyone otherwise. Further, at least one firearm (a .22 caliber Derringer) was found in a safe in Mr. McGhee's own bedroom; this weapon surely was Mr. McGhee's, even if those in the wall and floor compartments were not. The fact that .38 caliber ammunition was discovered in Mr. McGhee's briefcase, moreover, would tend to connect one or more of the .38 caliber pistols in the living room wall compartment to Mr. McGhee.

The transcript of the sentencing hearing shows that while the firearms were hidden in such a way as to be inaccessible to a stranger or casual visitor, they would be readily accessible to anyone who knew their location. And even if they were not readily accessible, nothing in § 2D1.1(b) of the guidelines, or the accompanying commentary, says that firearms have to be readily accessible to be "connected" with the drug offense. Even under the stricter standards of 18 U.S.C. § 924(c)(1), it has been suggested that one who possesses a firearm with the intention of having it "available" for possible use during a drug transaction may be guilty of violating § 924(c)(1) regardless of whether the weapon was "quickly and easily" available. *United States v. Feliz-Cordero,* 859 F.2d 250, 254 (2d Cir.1988).*

---

* The necessary criminal intent could not be in-

ferred from the mere presence of a loaded gun

■ Counsel for the appellant suggested for the first time at oral argument that Mr. McGhee was an antique gun collector. We could find no support for this claim in the record, and the fact that the firearms were concealed—like the fact that Mr. McGhee had previously been convicted of unlawful possession and receipt of a firearm while a convicted felon—suggests that his acquisition of the weapons was motivated by their utility in the drug trade, and not by their aesthetic value.

■ Mr. McGhee also contends that his conviction was tainted by the judge's failure to adopt the following requested special jury instruction aimed at informant Tammy McGhee Claremont, a drug addict:

"Also, the testimony of a witness who was using addictive drugs during the time he or she testified about should be considered by you with more caution than the testimony of other witnesses."

In asserting that it was prejudicial error for the trial judge to refuse to administer this special instruction, Mr. McGhee relies on our decision in *United States v. Griffin*, 382 F.2d 823 (6th Cir.1967), where we overturned a conviction for drug offenses because the court gave no special jury instructions regarding the credibility of a paid government informer who was an addict. Far from requiring a special jury instruction in all cases involving the testimony of an addict-informant, however, *Griffin* stated that reversal of a conviction would not be warranted unless there was "plain error in the charge affecting the substantial rights of a defendant." *Id.* at 828. It was clear in that case that "plain error" existed, because the addict-informer's testimony was corroborated on only minor points, and because there was no direct untainted evidence against the defendant. Here, however, there was substantial corroboration for Ms. Claremont's testimony, both through electronic surveillance (she was wired for sound when she purchased drugs from the defendant on January 14, 1988) and through evidence obtained by the officers in their search of the McGhee residence. Further, the jury was reminded of Ms. Claremont's drug addiction several times by various witnesses.

The trial judge gave a comprehensive general instruction on the credibility of all witnesses and a specific instruction about the credibility of government informers. This provided sufficient protection against the possibility of unfair prejudice. See *United States v. Butler*, 481 F.2d 531, 535 (D.C.Cir.1973) (less need for a special jury instruction about the credibility of an addict-informer where the jury was already aware that the witness was an addict, and where there was substantial corroboration for the witness' testimony); *United States v. Smith*, 692 F.2d 658 (10th Cir.1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983) (lack of special addict instruction did not prejudice the defendant, because general credibility instruction and special instructions regarding accomplice, informant, and felon testimony were sufficient to alert jury to credibility problems with addict-informer's testimony).

We have examined the appellant's remaining arguments and find them to be without merit. The judgment of the district court is AFFIRMED.

---

and ammunition in a bedroom dresser drawer, the court held in *Feliz–Cordero,* notwithstanding the discovery of drug paraphernalia in the same room. This holding suggests that it might have been difficult to prosecute Mr. McGhee successfully under 18 U.S.C. § 924(c)(1). If it be thought anomalous that Mr. McGhee can be penalized under the guidelines on the strength of circumstances that might not have supported an added sentence under § 924(c)(1), the lesson of *McMillan,* 477 U.S. 79, 106 S.Ct. 2411, is that there is no constitutional requirement that Mr. McGhee's possession of weapons be dealt with as a separate statutory offense.