OPINION
Appellant James K. James appeals a judgment of the Richland County Common Pleas Court convicting him of Aggravated Murder (R.C. 2923.03(A)(2) and R.C. 2923.01), and Aggravated Robbery (R.C. 2911.01):
ASSIGNMENTS OF ERROR:
 I. APPELLANT WAS DEPRIVED OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL: 1) FAILED TO BRING TO THE COURT'S ATTENTION THAT HIS CLIENT WAS PICTURED IN A BRIGHT ORANGE RICHLAND COUNTY JAIL JUMPSUIT IN THE PHOTO ARRAY DISPLAYED BY POLICE; AND 2) FAILED TO OBJECT TO THE PRESENTATION OF THE PHOTO ARRAY TO THE FINDER OF FACT.
 II. APPELLANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ADMITTED INTO EVIDENCE A "LIVE" PHOTOGRAPH OF THE VICTIM. THE PHOTOGRAPH WAS INTRODUCED PURELY FOR THE PURPOSE OF ENGENDERING SYMPATHY FOR THE VICTIM WITH THE INTENT OF CREATING AN ATMOSPHERE OF PREJUDICE AGAINST APPELLANT.
 III. APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE COURT FAILED TO GIVE THE JURY AN ADEQUATE INSTRUCTION ON THE SERIOUS PROBLEMS INHERENT IN ACCOMPLICE TESTIMONY.
 IV. APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND HIS RIGHT TO A FAIR TRIAL WHEN TRIAL COUNSEL FAILED TO REQUEST A SPECIAL INSTRUCTION ON THE CREDIBILITY OF JAILHOUSE INFORMANTS. ADDITIONALLY, THE COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO CAUTION THE JURY AS TO THE JAILHOUSE INFORMANT TESTIMONY.
 V. WHEN THE EVIDENCE SUPPORTS A FINDING OF NOT GUILTY, THE JURY LOSES ITS WAY WHEN IT RETURNS A VERDICT OF GUILT BASED ON A SUGGESTIVE IDENTIFICATION AND TESTIMONY FROM WITNESSES WHOLE TESTIMONY WAS INCREDIBLE, IMPEACHABLE, AND COMPLETELY SELF-SERVING.
At 2:15 p.m. on July 3, 1995, appellant was released from a Richland County juvenile detention facility. Shortly thereafter, appellant went to the home of Wayne Kyles. Appellant announced to Kyles' girlfriend that he was "going to get into something." Appellant and Kyles proceeded to "drink a little brew and smoke a little weed." Kyles produced a loaded .38 Revolver, which appellant concealed in a black fanny pack. Appellant and Kyles left the residence together, intending to go to Prospect Park to have some fun.
After participating in a private fireworks display at the park, appellant noticed a Lincoln Continental with one occupant drive pass them. Appellant complained about how he had to walk all day and was tired, so he decided to "rob the dude" in the Lincoln.
Appellant shot seventy-three-year-old Harry Miller in his garage at approximately 12:15 a.m. on July 4, 1995. A single gunshot wound to Miller's head resulted in uncontrollable hemorrhaging inside his head, throat, and mouth, causing him to drown in his own blood.
Immediately after the shooting, appellant dropped the .38 Revolver in the victim's front yard. He and Kyles ran from the crime scene. While fleeing, appellant discarded the black fanny pack. Shortly thereafter, they went back to the crime scene to find the murder weapon. Appellant found the gun and stuck it down his pants.
Almost directly across the street from the crime scene, Carla Wyles heard two gun shots fired. She looked toward the victim's residence. The garage door was up, the inside and outside lights were both on, and something was lying beside the car. She saw two men walk away from the side of the victim's house, into the front yard, and disappear into the darkness. The men were both young, close to six feet, slender built, and wore tee shirts. The man dressed in the white tee shirt stuck something down his pants. The other man made eye contact with Carla as she watched them from her upstairs window. She observed both appellant and Kyles in the victim's front yard, near a street light, for almost ten seconds.
On July 17, Carla Wyles identified both appellant and Kyles from a photo array. She identified Kyles almost immediately. Eventually, she identified appellant because of the shape of his head.
Shortly after the murder, a friend overheard appellant tell Kyles that "he shot the man in the shoulder." Subsequently, appellant called a girl he knew in Akron to tell her that "they had jacked somebody last night, and he had shot this man."
The day after the murder, James and Sonia Mack were at a convenient shop buying beer. Appellant was looking at the newspaper, which reported the homicide, and told Mack that "I thought I hit him in the body, and not the head."
Within a week of the murder, Christopher Jenkins, Tammy Hunter, and appellant were together in Mansfield. Appellant was arguing with a few men walking down the street. Both Jenkins and Hunter heard appellant tell the guys that "if you don't shut up, I'm gonna pop you like I did the old man."
Appellant was arrested in Zenia, Ohio on July 15 for the murder and robbery of Harry Miller. Appellant was incarcerated in the Richland County Jail awaiting trial. Two of his jail mates overheard appellant talking about the murder. Appellant told cell mates that he walked up to Mr. Miller as he was getting out of his car. Appellant told them that Miller made a lunge toward him and he shot him. Appellant claimed that they were kicking him when he was down, and there was blood gorging out of his mouth. Appellant laughingly stated that when he shot Miller, Miller was coming toward him, foaming at the mouth and making grunting sounds.
A .38 Revolver was later located in Kyles' apartment. The bullet retrieved from the victim's body had class characteristics of the recovered .38 Revolver, and could have been fired from the weapon. Gunshot residue was found to be present within the recovered black fanny pack.
Appellant was initially charged as a juvenile. He was bound over to the Richland County Common Pleas Court, and indicted for Aggravated Murder and Aggravated Robbery. The case proceeded to jury trial in the Richland County Common Pleas Court. He was convicted as charged. He was sentenced to twenty years to life imprisonment for the murder, and ten to twenty-five years imprisonment for the aggravated robbery.
Initially, Attorney David Homer was appointed counsel to represent appellant on appeal. After filing an Anders brief, Attorney Homer was permitted to withdraw from the case. This court then appointed the Ohio Public Defenders Office to represent appellant on appeal.
 I.
Appellant argues that counsel was ineffective for failing to object to the impermissibly suggestive photo array on the basis that appellant was pictured wearing an orange jumpsuit. Appellant argues that the suggestiveness of the photo, combined with Detective Wendling's comment to Carla Wyles after she identified appellant and Kyles that she had picked the right men, required that the identification be suppressed. Appellant further argues that counsel was ineffective for failing to object to the admission of the photo array into evidence.
Counsel is not ineffective unless his representation fell below an objection standard of reasonableness, and the defendant was prejudiced by such performance. Strickland vs. Washington
(1984), 466 U.S. 668; State vs. Bradley (1989), 42 Ohio St.3d 136,cert. denied, 497 U.S. 1011. To show prejudice, the defendant must show that had counsel not erred, there is a reasonable probability that the outcome of the proceeding would have been different. Id.
In assessing whether a pre-trial identification must be suppressed, the court must first consider whether the process was unduly suggestive, and then evaluate the totality of the circumstances to determine whether the identification was, nevertheless, reliable. Neil vs. Biggers (1972), 409 U.S. 118.
Appellant first argues that the process was unduly suggestive because appellant is pictured in a bright orange prison jumpsuit. However, the photographs only show appellant from just below the shoulders to the head. The photos do not conclusively demonstrate that appellant is in a prison jumpsuit as opposed to an orange shirt. The pictures did not include numbers, height markers, or any other identifying characteristics to associate them with law enforcement.
As to appellant's claim that Detective Wendling's comment rendered the photo array impermissibly suggestive, the mere suggestion that the suspects had been arrested does not render the array inadmissible. Common sense tells us that when police display a photographic array to an eyewitness, the police obviously believe it contains a picture of the criminal. Statevs. Stamper (1986), 33 Ohio App.3d 104, 107. In addition, appellant has not demonstrated that even if the photo array was impermissibly suggestive, Wyles' identification was unreliable. Wyles had an adequate opportunity to view appellant and Kyles. They walked slowly by her house, and walked directly under a street light, at which time, she saw their faces. She viewed them for at least ten seconds. According to her testimony, she thought she saw a body in Miller's garage and, therefore, was very focused on what she was observing.
Appellant has not demonstrated that counsel did not properly pursue the motion to suppress the photo array. Appellant has not demonstrated that Wyles' identification would have been suppressed had counsel pursued the issue differently.
Appellant also argues that counsel was ineffective for failing to object to the admission of the photo array, as the pictures of appellant in his jail jumpsuit were prejudicial. Appellant has not demonstrated a change in the outcome of the trial had the pictures not been submitted to the jury. As stated earlier, the photos do not conclusively demonstrate that appellant was in a jail jumpsuit. They bear no height markings or other markings indicating that they were in the police file. Further, the jury was presented with evidence that appellant had been released from the juvenile facility on the day proceeding the crime. Therefore, the jury was well aware that appellant had a prior record.
The first Assignment of Error is overruled.
 II.
Appellant argues that the court abused its discretion in admitting a photograph of the victim taken while he was alive. Appellant argues that the photograph was unfairly prejudicial, as it served solely to engender sympathy for the victim.
The physical condition and circumstances of the victims are relevant to the crime as a whole. State vs. Lorraine (1993),66 Ohio St.3d 414, 420. The victims cannot be separated from their crime. Id.
Similarly, in State vs. Soke (1995), 105 Ohio App.3d 226, the Court of Appeals for Cuyahoga County found no prejudice in the admission of a single photograph of the victims taken on their twenty-fifth wedding anniversary.
Appellant has not demonstrated that the admission of the single photograph of appellant while alive was so prejudicial as to deny him a fair trial.
The second Assignment of Error is overruled.
 III.
Appellant argues that the court failed to adequately instruct the jury concerning the problems with accomplice testimony. Appellant argues that the court should have given the jury an accomplice instruction, which emphasized the self-interest of the accomplice. The court instructed the jury as follows:
 ". . . You have heard testimony from Wayne Kyles, another person who is accused of the same crimes charged in this case and who is said to be an accomplice. An "accomplice" is one who knowingly joins another in the commission of a crime. Further, whether Wayne Kyles was an accomplice and the weight to give to his testimony are matters for you to determine. Testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution. . . ."
Tr. 729.
In addition, the court gave the jury the standard instruction concerning the credibility of witnesses.
O.J.I. 405.41, Testimony of an Accomplice, provides two alternatives for instructing the jury if an accomplice testifies. The first alternative, used by the court in the instant case, is to be used in conjunction with the general credibility instruction. The second alternative parrots the language of R.C.2923.03(D), and does not require an additional credibility instruction. The committee comment suggested that the court use one alternative or the other, but not both.
Appellant has not demonstrated that the court erred in using alternative one in the instant case. The court specifically instructed the jury to weigh the testimony of Wayne Kyles with grave suspicion and great caution. The court instructed the jury in accordance with applicable law.
The third Assignment of Error is overruled.
 IV.
Appellant argues that counsel was ineffective for failing to request a special instruction on the credibility of a jail house informant. Further, appellant argues that the court committed plain error in failing to caution the jury as to the credibility of the testimony of a jail house informant.
In State vs. Draughn (1992), 76 Ohio App.3d 664, in a case from Muskingum County, this court considered the need for a special instruction concerning the credibility of an addict-informant. The need for such an instruction depends on all the circumstances of the case. Id. at 675, citing United Statesvs. Griffin (CA6, 1967), 382 F.2d 823. In Draughn, the court gave the jury the standard instruction concerning credibility of a witness. The record was replete with references to the informant's drug use, the money the informant received from the police, and the informant's desire to get revenge on the defendant. The informant's testimony was corroborated by the tape recording of the buy, and the testimony of the officers who listened during the buy. The informant was searched before the buy, and observed by the police from the time he left the car until he entered the house. We concluded that given the corroborating evidence, the general credibility instruction was sufficient. Id. at 676.
We first note that the witnesses in the instant case were not informants in the traditional sense of the word. The witnesses were in jail with the appellant, but were not planted in the cell in an attempt to surreptitiously gain information.
Even if the witnesses were considered to be informants, a special instruction was not required. The jury was well aware of their circumstances at the time they claim to have overheard appellant's testimony, and at the time they testified. The testimony is replete with evidence that appellant told numerous people of his involvement in the crime. The testimony of Stevens and Hotzler that they heard appellant claim that Miller made a gurgling sound was corroborated by the testimony of the Coroner concerning the behavior of a person in similar medical circumstances.
Finally, appellant has not demonstrated that had such instruction been given, he would have been acquitted. Numerous witnesses testified as to statements made by appellant concerning his involvement in the crime. Carla Wyles identified appellant as one of the men she saw at the scene of the crime almost immediately after hearing the gunshots and observing a body in Miller's garage. Appellant was given ample opportunity to cross-examine the witnesses concerning their motives for testifying against appellant. The fourth Assignment of Error is overruled.
 V.
Appellant argues that the judgment is against the weight of the evidence. Specifically, appellant argues that all of the witnesses who testified were unreliable, and their testimony was not credible.
Weight of the evidence concerns the greater amount of credible evidence to support one side of the issue or the other.State vs. Thompkins (1997), 78 Ohio St.3d 380, 387. We must review the entire record, weight the evidence and reasonable inferences, and determine whether the jury lost its way. Id. The discretionary power to grant new trial should be exercised only in the exceptional case where the evidence weighs heavily against conviction. Id.
Appellant argues that none of the witnesses, who testified that appellant was involved in the crime, were reliable. However, numerous witnesses testified as to statements made by appellant concerning the crime. These statements were made to different people, in different situations, and at different times. Based on the evidence as outlined in the statement of facts earlier, there was abundant evidence from which the jury could conclude that appellant shot Miller.
As to the charge of Robbery, there was evidence that Miller's pockets were turned inside out, there was no wallet or money found on him, and his keys and garage door opener were found a short distance from the crime scene. This evidence, combined with appellant's numerous statements to outsiders concerning his involvement in the crime, was sufficient to convict appellant of Aggravated Robbery.
The fifth Assignment of Error is overruled.
The judgment of the Richland County Common Pleas Court is affirmed.
By: Reader, J., Hoffman, P. J. and Wise, concur.
 JUDGMENT ENTRY
CASE NO. 96-CA-17
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Common Pleas Court is affirmed. Costs to appellant.