992 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence C. DUSO, Susan C. Duso, Michael A. Mercier,
Defendants-Appellants.
 No.s 92-1162, 92-1274 and 92-1289.
 United States Court of Appeals, Sixth Circuit.
 April 27, 1993.
 
 Before BOGGS and BATCHELDER, Circuit Judges, and MANOS, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants, Lawrence Duso, Susan Duso, and Michael Mercier, appeal their convictions or sentences or both: Lawrence Duso appeals his conviction and sentence under the felon-in-possession statute, Susan Duso appeals her sentence for possession of cocaine with intent to distribute, and Michael Mercier appeals his conviction on possession of cocaine and various firearm charges. Finding only a sentencing error in Lawrence Duso's sentence, we affirm the convictions of Lawrence Duso and Mercier, affirm the sentences imposed on Susan Duso and Michael Mercier, and vacate the sentence imposed on Lawrence Duso and remand for resentencing.
 
 
 2
 * Acting on the basis of confidential information, the Bureau of Alcohol, Tobacco and Firearms (ATF) initiated an investigation of Michael Mercier, a convicted felon, regarding Mercier's alleged illegal firearms sales. ATF Agent Lawandus telephoned Mercier on January 22, 1991 and told Mercier he would like to purchase an automatic weapon. Mercier replied that he did not have any for sale at that time but could secure one for Lawandus.
 
 
 3
 Lawandus called Mercier a few times during the next week about the automatic weapon. Mercier's source had the weapon but was out of town one day, and in the next call, Lawandus discovered that the source had been arrested and was in jail. Lawandus then inquired about the .44 caliber firearm Mercier had mentioned in an earlier conversation, and Mercier agreed to sell it to Lawandus for $300. The two met that night at the Beaver's Den bar, conducted the transaction, and discussed other guns available for purchase.
 
 
 4
 Lawandus contacted Mercier on February 8 and March 14 about the purchase of another handgun. On March 15, Lawandus met Mercier at the Beaver's Den and followed him from the bar to Mercier's residence. There Lawandus purchased a .45 caliber Llama for $190. During the trip to and from Mercier's residence, Lawandus asked about buying a sixteenth of an ounce of cocaine from Mercier. Mercier said he had only a small amount of cocaine on his person, but that they could get the sixteenth at "Larry and Sue's."
 
 
 5
 After a few more phone calls to Mercier around the end of March and the beginning of April, Lawandus arranged to buy 1.5 grams of cocaine. On April 12, Lawandus met Mercier at Tubby's Pub to effect the purchase. Mercier left the bar on foot, and surveillance agents saw him walk a few blocks to a house belonging to Lawrence and Susan Duso. Mercier then returned to the bar, met Lawandus in his car, and sold Lawandus the 1.5 grams of cocaine. While the two were discussing the drug transaction, Mercier pulled out a 9-mm Smith & Wesson semi-automatic pistol, showed it to Lawandus, and briefly pointed it at him. Lawandus asked if he could buy the weapon, but Mercier said he was just holding the gun for someone who did not want to get caught with it because the person was on parole and would go back to prison for having it. Lawandus had not seen a gun in Mercier's possession when they first met at the bar and Mercier confirmed that he had not had the weapon when he left the bar on foot. The two arranged for the sale of one gram of cocaine the next week.
 
 
 6
 On April 19, Lawandus met Mercier at the Beaver's Den to complete the one-gram deal. During the course of conversation, Lawandus asked if he could purchase the 9-mm Smith & Wesson, but Mercier said that he had returned the gun to "Larry" and that the gun was not for sale. Lawandus and Mercier then drove together to Tubby's Pub and Mercier told Lawandus to wait inside the pub while he went to Larry's. As surveillance agents watched, Mercier went to the Duso residence and returned to Tubby's Pub. Mercier went into the bar and found Lawandus, the two went out to Lawandus's car, and Mercier sold Lawandus one gram of cocaine. A purchase of an "8-ball" (an eighth of an ounce of cocaine or approximately 3.5 grams) was arranged for April 26.
 
 
 7
 On April 26, Lawandus, along with several other agents, went to the Beaver's Den bar where Lawandus was to meet Mercier, and arrested Mercier. In a search of Mercier incident to his arrest, agents found on Mercier's person nine small packets of cocaine (total cocaine weight of 1.2 grams) and two pocket knives. Agents executed a search warrant at Mercier's residence and recovered a small quantity of marijuana and a loaded .30-.30 Marlin lever action rifle. That same day, agents executed a search warrant on the Duso residence. Agents found a leather shoulder holster hanging on a hallway doorknob and a loaded 9-mm Smith & Wesson handgun in the bedroom under the bed mattress. Cash totaling $6,700 was found in various places in the house, among which was the $100 bill that Lawandus had paid Mercier for cocaine in an earlier transaction. Susan Duso was arrested in the bathroom with 3.2 grams of cocaine in a purse, which she had tossed into the bathtub as soon as the agents walked in. Lawrence Duso was arrested shortly afterwards.
 
 
 8
 On May 15, a grand jury returned an indictment charging Mercier with Conspiracy to Possess with Intent to Distribute Cocaine (Count 1), Felon in Possession of a Firearm (Counts 2, 3, and 9), Distribution of Cocaine (Counts 4, 6, and 7), Possession of a Firearm during a Drug Trafficking Offense (Count 5), and Possession of Marijuana (Count 11); Lawrence Duso with Conspiracy to Possess with Intent to Distribute Cocaine (Count 1), Distribution of Cocaine (Count 8), and Felon in Possession of a Firearm (Count 10); and, Susan Duso with Conspiracy to Possess with Intent to Distribute Cocaine (Count 1) and Distribution of Cocaine (Count 8). Both Mercier and Lawrence Duso were convicted felons.
 
 
 9
 Following an eight-day jury trial, Mercier was found guilty on all counts and Lawrence Duso was acquitted on Counts 1 and 8, but found guilty on Count 10. During the course of the trial, Susan Duso's case was severed, and she subsequently pleaded guilty to Count 8 in exchange for a dismissal of Count 1.
 
 
 10
 Mercier had requested a jury instruction on the entrapment defense, but prior to the charge to the jury, the judge determined that an entrapment instruction would not be appropriate because Mercier had produced no evidence showing any reluctance on his part to engage in the charged crimes.
 
 
 11
 During the jury deliberations, the district court realized that it had inadvertently sent with the jury a copy of an indictment which included all of the prior offenses of Lawrence Duso (as the basis for the felon-in-possession charge) instead of a later, redacted indictment which listed only some of the felonies. (The parties had agreed to submit this redacted indictment to the jury.) The judge reconvened the jury, gave them the redacted indictment, and instructed them to begin deliberations anew, cautioning them not to consider at all what they had seen on the unredacted indictment.
 
 
 12
 Mercier was sentenced to 93 months incarceration. Lawrence Duso was sentenced to 36 months based on an upward departure equivalent to an increase of three criminal history categories because the district court felt that Lawrence Duso's criminal history level did not accurately reflect the true nature of his criminal record and failed to address the likelihood of his recidivism. Susan Duso was sentenced to 32 months, based on an offense level dictated by (1) a quantity of cocaine between 50 and 100 grams, (2) the possession of a firearm in the course of a narcotics offense, and (3) the refusal of the court to grant a credit for acceptance of responsibility.
 
 II
 
 13
 A. Mercier's Requested Jury Instruction on Entrapment
 
 
 14
 Mercier's first point of contention is that he was entitled to have the jury instructed on the defense of entrapment. The entrapment defense has two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in criminal conduct. Mathews v. United States, 485 U.S. 58, 62-63 (1988); Sherman v. United States, 356 U.S. 369, 376-78 (1958). A defendant is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment. Mathews v. United States, 485 U.S. 58, 62 (1988).
 
 
 15
 Mercier argues that several facts indicate lack of predisposition and government inducement: Agent Lawandus always initiated the phone calls, Lawandus kept asking for an automatic weapon even though Mercier did not have one for sale and did not make serious attempts to get one, Lawandus initiated the discussions about drugs, Mercier gave Lawandus drugs only after the second and third requests, and Lawandus knew of Mercier's serious alcohol problem. All of this shows, argues Mercier, that Lawandus took advantage of Mercier through a calculated plan of "solicitation, persuasion, and fraudulent representations."
 
 
 16
 In contrast to what Mercier would have us believe, the evidence does not support a finding that Mercier was not predisposed to commit the offenses charged. "[A] predisposed defendant is one who is ready and willing to commit an offense apart from government encouragement, and not an innocent person in whose mind the government implanted a disposition to commit an offense." United States v. Nelson, 922 F.2d 311, 317 (6th Cir.1990) (quoting United States v. Lazcano, 881 F.2d 402, 406 (7th Cir.1989)), cert. denied, 111 S.Ct. 1635 (1991). In the very first phone call Lawandus made to Mercier, Mercier responded with a ready willingness to commit the offense suggested by Lawandus. After a brief introduction, the following colloquy occurred between two men who had never met each other:
 
 
 17
 Agent: Ron told me you had something for sale.
 
 
 18
 Mercier: Well, actually, I have a couple but I wasn't selling them.
 
 
 19
 Agent: Oh, okay. Uhh, do you think you'd be able to get me one, or ...?
 
 
 20
 Mercier: Oh yea.
 
 
 21
 No more than thirty seconds after receiving a phone call from a total stranger, Mercier agreed to supply the stranger with an automatic weapon. This responsiveness was Mercier's custom. When Mercier was unable to get the automatic weapon Lawandus requested, Lawandus asked about a .44 caliber firearm Mercier had previously mentioned, and Mercier agreed to sell it for $300. In another conversation, Lawandus asked if Mercier could get some cocaine for him, and Mercier showed no hesitation in agreeing to supply Lawandus with the cocaine. The second gun transaction and the second drug buy were also without indication that Mercier was reluctant to engage in criminal activity. The fact that Lawandus initiated the transactions does not show government inducement or lack of predisposition.
 
 
 22
 Mercier argues that his failure to provide the automatic weapon and the drugs to Lawandus on his first request was evidence of his hesitancy. However, this failure to produce was not for lack of desire or predisposition, but for lack of immediate supply. Mercier clearly would have sold Lawandus the automatic weapon if his supplier had provided him with one. Likewise, if the amount of drugs Lawandus requested had been in Mercier's possession, there is no evidence that he would not have sold the drugs to Lawandus on the spot. Mercier failed to produce the "sufficient evidence" required to warrant the entrapment instruction.
 
 
 23
 B. Mercier's and Lawrence Duso's Felon-in-Possession Charges
 
 
 24
 Both Mercier and Lawrence Duso argue that their convictions under the felon-in-possession statute, 18 U.S.C. § 922(g)(1), cannot stand. Title 18 U.S.C. § 921(a)(20) provides that one previously convicted of a felony is not considered a felon for purposes of § 922(g)(1) if his civil rights have been restored. Citing United States v. Cassidy, 899 F.2d 543 (6th Cir.1990) and relying on Michigan law, defendants argue that their civil rights had been restored, so they could not have been in violation of § 922(g)(1).
 
 
 25
 Not long ago, defendants' arguments would have found some support in the law of this circuit. However, in United States v. Driscoll, 970 F.2d 1472 (6th Cir.1992), cert. denied, 113 S.Ct. 1056 (1993), a panel of this Court undertook a comprehensive review of the interaction between § 921(a)(20) and Michigan law, and rejected this very argument. See id. at 1475-82. Driscoll is dispositive here.
 
 C. Lawrence Duso's Double Jeopardy Claim
 
 26
 Lawrence Duso argues that he was subject to double jeopardy when the district court interrupted the jury's deliberations, gave the jury a redacted copy of the indictment, and told the jury to continue deliberations as if the jurors knew nothing of the first indictment. We do not accept this argument.
 
 
 27
 The Fifth Amendment right against double jeopardy attaches when the jury is empaneled and sworn. Crist v. Bretz, 437 U.S. 28 (1978). However, a double jeopardy claim can be raised "only if there has been some event, such as acquittal, which terminates the original jeopardy." Richardson v. United States, 468 U.S. 317, 325 (1984).
 
 
 28
 The fact that the judge told the jury to start deliberating all over again did not implicate the Double Jeopardy Clause because deliberations had just begun and the jury had not reached a verdict in the case. At oral argument, defense counsel emphasized that the district court instructed the jury to begin "afresh" and to "reconsider the proofs from the beginning," thus indicating that Lawrence Duso was placed in jeopardy once on the first round of deliberations and a second time on the second round of deliberations. We disagree. To analogize to a sporting event, restarting a race because a runner jumped the gun is very different from requiring a rematch after the race has been awarded to a particular contestant by either victory or default. The Double Jeopardy clause is concerned with only the latter type of occurrence and invoking the clause requires some event terminating the original jeopardy. The district court's admonition in this case did not terminate the original jeopardy, and thus Lawrence Duso's argument fails.
 
 
 29
 D. Lawrence Duso's Possession of the Firearm
 
 
 30
 Lawrence Duso next argues that the evidence was insufficient to support a finding that he was "in possession" of the firearm which was found under his bed mattress. He contends that the mere fact that he occupied the house and used the bedroom is not sufficient to establish possession. This argument fails.
 
 
 31
 It is elementary that possession of a firearm may be either actual or constructive and need not be exclusive but may be joint. United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Constructive possession exists when a person does not have actual possession but instead knowingly has both the power and intention at a given time to exercise dominion and control over an object, either directly or through others. Id. Both actual and constructive possession may be proved by direct or circumstantial evidence. Id.
 
 
 32
 The government presented evidence at trial that a 9-mm Smith & Wesson pistol was found under Duso's mattress; that a black leather shoulder holster was hanging on a doorknob in the hallway outside the bedroom; that Mercier displayed a 9-mm Smith & Wesson during the April 12 drug transaction; that Mercier said he had gotten the gun from someone who "couldn't get caught with it"; that Mercier said he did not have the gun before he went to the Duso residence to get the cocaine for Lawandus; that Mercier said he had returned the 9-mm gun to "Larry" when Lawandus later asked to buy it; and that cash from the drug transaction was found by the bed which contained the gun. These facts are more than sufficient to permit a reasonable jury to conclude that Lawrence Duso knew the gun was under his mattress and had the power and intention to exercise control over it.
 
 
 33
 The two cases relied upon by Lawrence Duso are easily distinguished. This court held in United States v. Birmley, 529 F.2d 103 (6th Cir.1976), that a back seat passenger in an automobile in which guns were found in the trunk was not, without more, in constructive possession of the weapons. The passenger was not the owner of the car, nor the driver of the car, so his intention to exercise control over the guns in the trunk could not be inferred from the circumstances. "Presence alone cannot show the requisite knowledge, power, or intention to exercise control over the unregistered firearms." Id. at 108. In contrast to Birmley, the facts surrounding the 9-mm gun found under the mattress of Lawrence Duso's bed clearly imply knowledge and intent to exercise control.
 
 
 34
 Also distinguishable is United States v. Beverly, 750 F.2d 34 (6th Cir.1984). In Beverly, the defendant was present in another's kitchen when a gun containing one of his fingerprints was found in the kitchen trash. The court held that without more, these two facts could not constitute constructive possession of the weapon (so as to satisfy the requirements of 18 U.S.C. § 922(h)(1) (receipt by a convicted felon of a weapon which has traveled in interstate commerce)). The case at bar, where the gun was found in Duso's own house, under his own mattress, is completely different.[1] The evidence, considered in the light most favorable to the prosecution, see Jackson v. Virginia, 443 U.S. 307, 319 (1979), supports a finding of constructive possession.
 
 E. Lawrence Duso's Sentence
 
 35
 Finally, Lawrence Duso argues that the district court erred in deciding to depart upward from the sentencing range dictated by his offense level and criminal history category under the U.S. Sentencing Guidelines. The guideline range was 18-24 months based on an offense level of 14 and a criminal history category of II. The district court noted the numerous offenses committed by Lawrence Duso more than 10 years previously[2] (and thus did not enter into the criminal history calculation) and concluded that the criminal history category "substantially underrepresent[ed] the defendant's true criminal history and [was] far out of balance with the typical offender whose actual criminal history category is Roman Numeral II." The district court then sentenced Lawrence Duso to 36 months incarceration.
 
 
 36
 The district court gave two primary reasons for the departure. One, Lawrence Duso had a "lengthy and durable record of criminality" going back to the mid-1960s which was not representative of the usual category II defendant. The district court said, "[T]he defendant's felony conviction record which goes unscored here primarily due to its age, significantly underrepresents the true seriousness of the defendant's criminal history." Two, a pattern of conduct had been established which indicated a strong likelihood of recidivism. The court specifically noted that it had just recently revoked Duso's bond because of Duso's consumption of alcohol and possession of a dangerous knife, and considered this reason to believe Duso was going to continue in a life of crime after the relatively short prison term to be given on the instant charge.
 
 
 37
 The Guidelines expressly permit departure when the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct. U.S.S.G. § 4A1.3. But, "[a] sentencing court must examine the next higher criminal history category when departing from the guidelines, and if departing beyond this next level, the sentencing court must demonstrate that it found the sentence imposed by the next higher level too lenient." United States v. Lassiter, 929 F.2d 267, 270 (6th Cir.1991) (citing United States v. Kennedy, 893 F.2d 825 (6th Cir.1990)).
 
 
 38
 The court calculated the upward departure using the following method: the court calculated the "proper" criminal history category by ignoring the years in which the offenses had been committed and totaling the points as would normally be done. The court then concluded that the "accurate level" was a history category of V (instead of II).[3] The court said, "I have no hesitance in determining that the appropriate course here for the Court is to depart upward to the criminal history category that would be objectively mathematically resultant from the behavior that the defendant has suffered his convictions for in the past." The court discussed each level between II and VI but said little more than that levels III, IV, and V were inadequate because they did not provide a big enough increase in the time served--III would add only 3 months, IV only 9 months, and V only 15 months.[4]
 
 
 39
 The district court's method was inappropriate for two reasons. First, it does not satisfy the requirements set down by this Court in Kennedy. Kennedy requires a step-by-step justification of the upward departure, and the district court's comments (to the effect that the prison time added by each additional category was simply not enough) were not sufficient. Second, § 4A1.3 permits upward departure when the criminal history category does not adequately represent the criminal record because of factors not taken into account by the Guidelines. The age of the conviction is nowhere mentioned as reason for departing, and rightly so, because the age of the convictions is taken into account by the Guidelines. The Sentencing Commission believed there were sound policy reasons for not considering stale convictions, and a district court is not permitted to depart upward solely because it thinks the Guidelines do not adequately consider crimes committed over 10 and 15 years ago. See United States v. Eve, 984 F.2d 701 (6th Cir.1993).[5] If the district court identifies circumstances that the Commission did not sufficiently take into consideration, an upward departure based on these other factors would be appropriate where the calculation does not reflect the true criminal history of the defendant. See U.S.S.G. § 4A1.3; see, e.g., United States v. Christoph, 904 F.2d 1036 (6th Cir.1990) (offense committed while in jail pending sentencing and past offenses not resulting in convictions were not counted in criminal history level and could be considered as facts justifying increase), cert. denied, 498 U.S. 1041 (1991).
 
 
 40
 With regard to the district court's second reason, the likelihood of recidivism is a proper reason for an upward departure. See United States v. Feinman, 930 F.2d 495 (6th Cir.1991). However, it must be remembered that the circumstances must be sufficiently "unusual" to warrant departure because the Guidelines address recidivism already. See United States v. Joan, 883 F.2d 491, 494 (6th Cir.1980), cert. denied, 493 U.S. 862 (1989).
 
 
 41
 The district court made two other statements which tend to explain the court's conduct, and we comment briefly on these. First, the district court said, "I think the seriousness of the offense at bar is, if anything, understated by the range of guideline sentences that are available to the court." This tends to explain why the court departed upward, but it cannot justify the upward departure unless specific mention is made of the particular inadequacies of the guideline range. Second, at sentencing, the judge expressed disappointment in Duso's links to drugs and weapons and in the blatantly false testimony of Duso's son at trial. The court, however, never expressly stated these facts were a basis for the upward departure. Upon remand, the court may consider whether the facts recited warrant an upward adjustment under § 4A1.3 or any other Guidelines provision (e.g., § 3C1.1 for obstruction of justice for subornation of perjury).
 
 
 42
 Because of the improper method used to calculate the "accurate" criminal history category and its inseparability from the other bases for the adjustment, we remand Lawrence Duso's case to the district court for resentencing.
 
 F. Susan Duso's Sentence
 
 43
 Susan Duso entered a guilty plea, and on appeal she challenges the calculation of her sentence. The district court determined her sentence by:
 
 
 44
 (1) using an offense level dictated by the amount of cocaine which was the subject of the conspiracy charged in Count I (but dismissed as part of the plea agreement) pursuant to Guidelines § 2D1.1(c)(14). The total included each of the small quantities that Mercier had sold to Agent Lawandus (approximately 2.5 grams), the 3.2 grams found in Susan Duso's purse, the 1.2 grams found on Mercier upon his arrest, and an additional 67 grams. The 67 gram amount was the result of a cash-to-drugs conversion based on the $6,700 in cash found in the Dusos' residence which the court concluded was the proceeds of drug activity (because neither Mr. or Mrs. Duso was employed).
 
 
 45
 (2) using a criminal history category of II.
 
 
 46
 (3) increasing the offense level by two points pursuant to Guidelines § 2D1.1(b)(1) for possession of a weapon during the offense.
 
 
 47
 (4) refusing to grant an acceptance of responsibility credit of two levels.
 
 
 48
 These factors led to a guideline range of 30-37 months, but the district court could not sentence above the midpoint of the applicable guideline range pursuant to a valid Fed.R.Crim.P. 11 plea agreement. Susan Duso was sentenced to 32 months incarceration.
 
 
 49
 Susan Duso challenges her sentence, arguing that factors (1), (3), and (4) were erroneously determined. First, she contends that her offense level should be based on only the 3.2 grams found in her possession upon arrest and not on a speculative estimation of drugs sold out of her home. Her son testified that he had given her the $6,700 to save for him because he did not trust banks, and she asserts that the district court erred in assuming the $6,700 was drug proceeds.
 
 
 50
 The district court's findings of fact with regard to Guidelines issues are subject to reversal only if clearly erroneous. 18 U.S.C. § 3742(e). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Perez, 871 F.2d 45, 47 (6th Cir.), cert. denied, 492 U.S. 910 (1989). And, the court may base the offense level on the drugs foreseeably involved in a jointly undertaken criminal activity, Guidelines § 1B1.3, may calculate the amount based on monetary transactions and the sale prices of drugs, United States v. Warner, 971 F.2d 1189 (6th Cir.1992) (amending United States v. Warner, 955 F.2d 441 (6th Cir.), cert. denied, 112 S.Ct. 3050 (1992)), and may estimate the amount of drugs involved, if the exact amount cannot be determined, as long as the conclusion is supported by a preponderance of the evidence, United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.1989), cert. denied, 498 U.S. 990 (1990). See also United States v. Robison, 904 F.2d 365, 371 (6th Cir.) ("quantities of drugs that are not a part of the count of conviction may be included in determining the base offense level as long as the drugs were 'part of the same course of conduct or common scheme or plan as the offense of conviction' " (quoting Guidelines § 1B1.3(a)(1))), cert. denied, 498 U.S. 946 (1990).
 
 
 51
 The court rejected the testimony of Susan Duso's son and sentenced Susan Duso based on a reasonable estimate of the drug activity for which she was responsible. The court also noted the pattern of conduct at the Duso residence in support of the offense level calculation. The district court's factual finding that the money represented the proceeds from drug transactions is not clearly erroneous, and the court did not err with respect to that component of the sentencing calculation.
 
 
 52
 Susan Duso next argues that she did not possess the weapon found in her residence, and therefore the district court erred in adding two levels to her base offense level under Guidelines § 2D1.1(b)(1). Although she admitted both knowing that a gun holster was hanging on a doorknob in the hall and seeing firearms in the house before, she claimed that she did not know there was a gun under the mattress of her bed.
 
 
 53
 The Guidelines provide that an offense level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." Guidelines § 2D1.1(b)(1). Application Note 3 of this section states in part,
 
 
 54
 The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.
 
 
 55
 The decisions of this circuit have confirmed that § 2D1.1(b)(1) is not a difficult standard to satisfy. Essentially, knowledge of the weapon plus availability to the defendant is sufficient to justify the enhancement. See, e.g., United States v. McGhee, 882 F.2d 1095 (6th Cir.1989) (fact that defendant had weapons hidden in his house when he purchased cocaine from his daughter was sufficient to support § 2D1.1(b)(1) increase); United States v. Snyder, 913 F.2d 300 (6th Cir.1990) (presence of firearms in nightstand sufficient for § 2D1.1(b)(1) increase on possession conviction), cert. denied, 498 U.S. 1039 (1991); see also United States v. Sanchez, 928 F.2d 1450 (6th Cir.1991) (discussing the requirements for possession under § 2D1.1(b)(1)).
 
 
 56
 The court found the surrounding circumstances were sufficient to find that Susan Duso possessed the gun. The court said:
 
 
 57
 The Court is well familiar with Tisdale [ United States v. Tisdale, 952 F.2d 934 (6th Cir.1992) ] and the cases that underlie that, the concept can either be personal possession of a weapon or it can be simply having a weapon in the house where drug transactions take place in order to fortify the house or create what some courts have called a sort of fortressing effect to the drug operation. Clearly in this case, the shoulder holster that fit that automatic weapon found in the bedroom was in a public--more or less public area of the house....
 
 
 58
 ... The gun appeared to be in the master bedroom upstairs in a position that was acceptable [sic] to anybody who knew where it was secreted. I have no difficulty in finding Mrs. Duso was in a position to have known of that weapon being in and around the house.
 
 
 59
 The weapon clearly was used in connection with the drug operations there, and I will solidify--finalize my findings with regard to that.
 
 
 60
 The district court's finding that Susan Duso "possessed" the weapon is not clearly erroneous. The gun's holster was in plain view in her own home and she had seen weapons in the house before. Based on her own admissions, the judge reasonably rejected her denial that she knew of the weapon's presence under her very own mattress. Because the weapon was present and it was not "clearly improbable" that the firearm was connected to the offense, the enhancement will stand.
 
 
 61
 Finally, Susan Duso argues that the judge erroneously denied her a two level credit for acceptance of responsibility (Guidelines § 3E1.1). She asserts she was entitled to the credit for two reasons: (1) she pleaded guilty and admitted her offense, and (2) the plea agreement said she was entitled to a reduction of two levels for her plea of guilty.
 
 
 62
 The district court denied the acceptance of responsibility reduction, finding that Susan Duso only admitted the bare minimum required to support a guilty plea, admitted no more than her involvement with the 3.2 grams of cocaine in her statement to the probation department, and "did nothing to explain, contradict or in any way make sense out of the other dozens of circumstances that surrounded this possession of cocaine...."
 
 
 63
 It is the defendant's burden to show by a preponderance of the evidence that he or she has accepted responsibility for the crime committed. Such acceptance is a question of fact and the district court's findings of fact on this matter are accorded considerable deference and are not to be disturbed unless clearly erroneous. United States v. Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991).
 
 
 64
 We first reject Duso's claim that the plea agreement "entitled" her to the reduction. The plea agreement explicitly stated three things which undercut her position: the government would recommend that she be granted the reduction, the court could reject the government's position, and the plea agreement was not binding on the court. Her contention that she was entitled to the credit is meritless. Second, pleading guilty does not, by itself, entitle a defendant to a two-level reduction for acceptance of responsibility, if the plea is outweighed by other factors. United States v. Downs, 955 F.2d 397, 400 (6th Cir.1992). Here, the court did not find an honest acceptance of responsibility and denied the reduction. We cannot say that this finding was clearly erroneous.
 
 III
 
 65
 For the foregoing reasons, Mercier's conviction is AFFIRMED, Lawrence Duso's conviction is AFFIRMED but his sentence is VACATED and REMANDED for resentencing, and Susan Duso's sentence is AFFIRMED.
 
 1964: Desertion from the U.S. Army
 1971: Possession of Burglary Tools
 1971: Breaking and Entering of a Coin Box
 
 66
 1971: Breaking and Entering of a Dwelling House with Intent to Commit Larceny
 
 1973: Prison Escape
 
 
 *
 The Honorable John M. Manos, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 We note that neither Lawrence nor Susan Duso introduced evidence at trial or sentencing that anyone other than the two of them slept in this bed
 
 
 [2]
 Lawrence Duso had several misdemeanor offenses and the following felonies over ten years old:
 
 
 [3]
 At first, the court's calculation resulted in 14 criminal history points, indicating a history category of VI. But after an extended discussion on the Guidelines' treatment of Duso's prior crimes (still ignoring the dates though), the court calculated a point total of 10, resulting in a criminal history category of V
 
 
 [4]
 Because of the court's revision of its initial criminal history category calculation (from VI to V), the court's rejection of level V was unnecessary. However, the judge noted that if, under his new calculation, level VI had been warranted, he would have rejected level V as he had earlier said he would
 
 
 [5]
 We note that some circuits have approved the consideration of convictions which happen to fall just outside the limitation period as an exception to the general rule that it is improper to use convictions outside the ten or fifteen year limits of the Guidelines (U.S.S.G. § 4A1.2(e)). See, e.g., United States v. Lopez, 871 F.2d 513 (5th Cir.1989) (two conspiracy convictions which were barely outside the ten year limit were properly considered; sentence vacated on other grounds). However, this exception would not apply to the case at bar because the most recent of Lawrence Duso's offenses which was outside the limitation period was committed seventeen years previously