9 F.3d 111
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brenda C. WORKMAN, Lois Breeding, and Jack G. Gibson,
Defendants-Appellants.
 Nos. 92-5925, 92-5979 and 92-5978.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before KEITH and SILER, Circuit Judges, and WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 In these three consolidated appeals, defendants Brenda C. Workman, Jack G. Gibson, and Lois Breeding seek relief from sentences imposed following their guilty pleas to various drug offenses. Collectively, the defendants challenge the following: (1) the district court's admission of hearsay evidence at the sentencing hearing; and (2) the district court's finding that the amount of cocaine for which defendants were held responsible had been established by a preponderance of the evidence. Individually, Breeding challenged the enhancement of her base offense level for possession of a firearm during the commission of a drug offense. Finally, Workman, individually, raised two additional issues: (1) the increase of Workman's offense level by two levels for obstruction of justice; and (2) the denial of a two-level reduction for acceptance of responsibility. For the following reasons, the district court's sentences are AFFIRMED.
 
 I. FACTS
 
 2
 Defendants were charged in a six-count indictment with possession of various amounts of cocaine with intent to distribute, distribution of cocaine, and conspiracy to possess cocaine with intent to distribute, all in violation of 21 U.S.C. Secs. 841(a)(1), 846 and 18 U.S.C. Sec. 2. In addition, Gibson was charged with being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g).
 
 
 3
 Breeding and Gibson, mother and son, lived together in a trailer in Jeremiah, Kentucky, in an area known as "the curve." Workman, Gibson's half sister, lived nearby. When law enforcement officials became suspicious that cocaine was being sold at the curve, they sent an informant to make controlled buys. In the fall of 1991, the informant bought cocaine on four occasions: twice from Workman and once each from Breeding and Gibson. The total weight of the purchases was 3.5 grams. The execution of a search warrant at the premises revealed the following: (1) an additional 46.8 grams of cocaine; (2) a loaded SKS Chinese assault rifle in a bedroom; and (3) a loaded Mark 4 Colt .45 caliber semi-automatic pistol and several loaded magazines in a truck.
 
 
 4
 On the day of trial, defendants each pled guilty to the conspiracy charge and to one count of possessing and distributing cocaine, and the remaining drug counts were dismissed. Gibson also pled guilty to possessing a firearm. However, defendants disputed the amount of cocaine involved.
 
 
 5
 As a result of the disputed amount, the district court had the probation officer conduct a series of "abuser interviews," in which the interviewees were requested to estimate the quantity of cocaine they had delivered to or purchased from the defendants.[1] The probation officer concluded from these interviews that defendants were accountable, for sentencing purposes, for 569.78 grams of cocaine. However, the accuracy of the presentence reports was called into question due to certain factors revealed during the sentencing hearing. First, some of the interviews were not conducted until after the presentence reports had been prepared. Second, at the hearing, only two of the interviewees, Edward Miller and Louise Johnson, testified, and their testimony varied in large part from the presentence reports. The reports indicated that Miller purchased 141.75 grams of cocaine between March and August, 1990, and that Johnson had purchased 90 grams during a three year period. However, based on their testimony, the district court concluded that Miller purchased only 16 grams during the stated period, and that Johnson purchased only 4 grams over three years.
 
 
 6
 In light of the discrepancies, the defendants specifically challenged the information regarding transactions involving Amanda Rose Howard, a non-testifying interviewee who, according to the presentence report, purchased 141.75 grams of cocaine from defendants between October, 1988, and August, 1991. The district court concluded that Howard had purchased only 76 grams of cocaine during the relevant time frame.
 
 
 7
 Based on the evidence presented at the sentencing hearing, the district court found that Gibson and Breeding were involved in the conspiracy between October, 1988, and December, 1991, and that Workman was sporadically involved between October, 1988, and May 1990. Workman then became fully involved after May, 1990, when she moved back to Kentucky. The court concluded that during the course of the conspiracy, Gibson and Breeding were responsible for the possession of 162.80 grams, while Workman was responsible for 120.80 grams. Relying on this information, the district court calculated Gibson's offense level range as eighteen, with a criminal history category of II. Gibson was sentenced at the maximum end of the applicable guideline range to 37 months imprisonment on all counts, to be served concurrently. The court calculated Breeding's offense level as eighteen, with a criminal history category of I. Breeding also received the maximum guideline sentence of 33 months imprisonment on all counts, to be served concurrently. Workman's offense level was calculated to be twenty-two, due to a two-level enhancement for the presence of a firearm and a two-level enhancement for obstruction of justice. Workman was sentenced to 41 months imprisonment on all counts, to be served concurrently.
 
 II. STANDARD OF REVIEW
 
 8
 In reviewing federal guideline sentences, this court applies a clearly erroneous standard of review to the district court's factual findings, United States v. Williams, 952 F.2d 1504, 1514 (6th Cir.1991), and while giving due deference to the district court's application of the guidelines to those facts, it renders de novo review of the district court's legal conclusions. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 III. HEARSAY EVIDENCE
 
 9
 Relevant hearsay evidence is not per se inadmissible at sentencing. "The long-established principle ..., both before and after adoption of the Guidelines, is that the constitutional protections afforded defendants at a criminal trial, including confrontation rights, are not available at sentencing proceedings to limit the court's consideration of the background, character and conduct of the defendant." United States v. Silverman, 976 F.2d 1502, 1510-11 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1595 (1993). Hearsay evidence may be considered "[s]o long as the evidence in the presentence report bears 'some minimum indicia of reliability' in respect of defendant's right to due process." Id.; U.S.S.G. Sec. 6A1.3 ("[T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). Thus, if the evidence is reliable "beyond mere allegation," it is relevant to sentencing. Id.
 
 
 10
 In preparation of the presentence report, the probation officer conducted interviews of several of defendants' former buyers and sellers to determine the amount of cocaine involved in the conspiracy. He concluded from the interviews that the defendants were accountable for 569.78 grams of cocaine. At the sentencing hearing, the defendants objected to the presentation of the interview information as unreliable hearsay. However, the evidence of defendants' drug activities was sufficiently corroborated by testimony and other information. Thus, the district court properly considered the hearsay testimony as relevant evidence with "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3.
 
 IV. AMOUNT OF COCAINE
 
 11
 A district court's factual findings as to the quantity of drugs for which a defendant is to be held accountable is reviewed under a clearly erroneous standard. United States v. Moreno, 933 F.2d 362, 374 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). If the court cannot determine an exact amount, an estimate of the drugs involved will suffice if supported by a preponderance of the evidence. United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 498 U.S. 990 (1990).
 
 
 12
 The district court explained its conclusions of law and findings of fact in the following manner:
 
 
 13
 Although the findings above include, perhaps, a margin of error, the court finds that, more likely than not, any margin of error, is insufficient to critically alter the sentencing outcome, and that the defendants are, more likely than not, responsible for a quantity of cocaine greatly in excess of the amounts determined by the court.
 
 
 14
 Thus, the court relied on the presentence report, the information obtained during the "abuser interviews," and testimony at the hearing to determine the relevant amount of cocaine involved in the conspiracy.
 
 
 15
 Defendants erroneously relied on two cases, United States v. Robison, 904 F.2d 365 (6th Cir.), cert. denied, 498 U.S. 946 (1990), and Walton, 908 F.2d 1289, to challenge the reliability of the information derived from the abuser interviews, specifically Howard's interview. In Robison, the district court rejected the uncorroborated testimony of a single witness. Robison, 904 F.2d at 372. In this case, however, the district court did not rely on Howard's testimony only, but considered all the information derived from the interviews. Furthermore, Howard's testimony was corroborated by the testimony of the other interviewees who all admitted buying or selling cocaine from the defendants. In Walton, this court adopted the preponderance of the evidence standard for making quantity determinations. Walton, 908 F.2d. at 1302. The district court relied on this standard by "err[ing] on the side of caution" when reducing the amount of cocaine attributable to Howard from 141.75 grams to 76 grams. As a result, the reduction reflected the court's careful calculations regarding the quantity determinations. Thus, the district court's findings of fact were not clearly erroneous.
 
 V. FIREARM ENHANCEMENT
 
 16
 This court should not disturb a district court's enhancement for a defendant's possession of a firearm during the commission of the offense unless the factual findings that underlie the district court's sentencing decision are clearly erroneous. United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990), cert. denied, 112 S.Ct. 1504 (1992). A two-level enhancement is proper "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1(b)(2), comment 3. The defendant has the burden to prove the clear improbability of the weapon's use or connection with the offense. See United States v. McGhee, 882 F.2d 1095, 1097 (6th Cir.1989).
 
 
 17
 The pistol found in the truck was registered in Breeding's name, while the assault rifle, found in Breeding's bedroom, allegedly belonged to Breeding's son. In addition, approximately 46 grams of cocaine, part of the offense conduct, were found in Breeding's house. Thus, there was a connection between the rifle and the offense. Further, the fact that it was found in Breeding's bedroom was persuasive evidence that it was in her possession. See McGhee, 882 F.2d 1095. Although Breeding denies knowledge of the gun, the firearm of one coconspirator may be reasonably imputed to another. See United States v. Williams, 894 F.2d 208, 211 (6th Cir.1990). Thus, in light of these factors, the district court properly assessed a two-level enhancement of Breeding's offense level.
 
 VI. OBSTRUCTION OF JUSTICE FOR WORKMAN
 
 18
 A district court's determination that a defendant obstructed justice in connection with the offense is also a finding of fact which will be disturbed on appeal only if clearly erroneous. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991). Where a defendant "willfully obstructed or impeded, or attempts to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense," a two-level increase in the offense level is proper. U.S.S.G. Sec. 3C1.1. Examples of obstruction of justice include threatening, intimidating, or unlawfully influencing a co-defendant, witness or juror, directly or indirectly. U.S.S.G. Sec. 3C1.1, comment (n. 3) (emphasis added).
 
 
 19
 Workman's visit to the confidential informant's house with a group of people, while drunk, and then shouting and banging on his house and demanding that he come out, constitutes "threatening and intimidation" of a witness. Therefore, the district court properly assessed a two-level enhancement of Workman's offense level.
 
 VII. ACCEPTANCE OF RESPONSIBILITY FOR WORKMAN
 
 20
 A defendant is entitled to a two-level reduction for acceptance of responsibility if "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. Sec. 3E1.1(a). The application notes provide that "[c]onduct resulting in an enhancement under Sec. 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Id. at comments 4 & 5. As the sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility, his determination should be given great deference on review. Id.
 
 
 21
 At sentencing, the district judge specified that he did not give an acceptance of responsibility reduction to Workman "because of the attempt to threaten a witness in this particular case." The guidelines explicitly condone the equation of Workman's obstruction of justice with her failure to accept responsibility. Threatening and yelling at the confidential informant indicates Workman's belief that it was the confidential informant's behavior, not her own, that led to her conviction. Thus, the denial of a two-level reduction was proper.
 
 VII. CONCLUSION
 
 22
 For the foregoing reasons, the district court's decision is AFFIRMED.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The interviewees included prior informants and others who had charges pending against them